## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO. 4:01-cr-00059-SPM-AK

PIERRE CARTER,

    Defendant.
_____/

### REPORT AND RECOMMENDATION

    This matter is before the Court on Doc. 158, Motion to Vacate under 28 U.S.C. § 2255, and Doc. 162, supporting affidavit, by Pierre Carter.  The Government has filed its response, Doc. 171, and Defendant has filed a reply.  Doc. 172.  This cause is therefore in a posture for decision.  Having carefully considered the matter, the Court recommends that the motion be denied.

### BACKGROUND

    Defendant was charged in two counts of a four-count Indictment with conspiracy to distribute and to possess with the intent to distribute cocaine and more than 50 grams of a substance containing cocaine base, "crack cocaine," and with distribution of more than 5 grams of a substance containing cocaine base, "crack cocaine."  Doc. 1.  On or about October 24, 2001,

after Defendant's initial appearance, the Government allowed Defendant's attorney, William

Clark, Jr., to view a videotape of Defendant carrying 44 grams of crack cocaine to a car.  Doc.

146 at 19.  At that time, the Government had no further information regarding drug quantities

above that weight.  *Id*.  Thus, according to counsel for the Government, "if he walked in and pled

guilty, [the Government] would not have been able to show more than 44 grams...."  *Id*. at 19-20.

Defendant did not, however, "come in and plead guilty."  *Id*. at 20.  Instead, in

December, 2001, his co-defendants pled guilty first and provided the Government with enough

information  to make it "very clear that Mr. Carter was involved in well over 50 grams, and

that's where we ended up on the date of trial."  *Id*; *see also* Docs. 59 & 60.  Each of the co-

defendants subsequently received substantial assistance motions and were sentenced to 131 and

138 months.  Docs. 109, 110, 113 & 114.

In early February, 2002, Mr. Clark moved to withdraw from further representation based

on irreconcilable differences between him and Defendant.  Docs. 68 & 73.  Attached to Clark's

motion to withdraw was Defendant's *pro se* motion to have counsel removed.  Doc. 68 at 3.  Of

importance are the following assertions:

> The Defense that the Defendant wish to have presented has not been considered
> by counsel.  Counsel wishes to pursue an avenue that is totally opposite to the
> defense that the Defendant wishes to present....Its well settled that when an
> attorneys strategy for a defense, diverge from that of the defendant, this creates a
> conflict of interest.  The Defendant submits to this Court that when a defendant
> decides to exercise his rights and go to trial, he has a right to present his defense
> of choice.

*Id*. at 5.  The Court conducted a hearing on counsel's motion and allowed Defendant to "tell [the

Court] exactly what you think Mr. Clark should be doing that he's not doing," to which

Defendant stated:

For one, he can't seem to get the phone records.  The phone records he has are for the last couple months when Mr.–the person we're talking about that is in the BOP, he has been calling from, let's say, probably a year and half ago and he's been incarcerated.  They can't seem to get those records from either one of those institutions because supposedly they're not federal institutions....

Also, I can't get the motion of discovery, and the defense I want to present.  Mr. Clark doesn't feel that it would be appropriate in my case, and I just don't think–we have irreparable differences, sir.

* * *

I feel that I need counsel that's more–counsel, someone who has more time.  Mr. Clark never really has enough time for my case.

Doc. 149 at 5-6.

At that point, counsel for the Government interjected "so we aren't talking as vaguely,"

adding:

My understanding from talking to witnesses in the case, and from specific <u>Brady</u> requests that I've received, is that it appears that Mr. Carter is trying to press some sort of entrapment or public authority defense.  That is, he would want to say that on the day he was arrested he knew that the informant was working for the police and he...thought he was merely helping out.

There is, as far as the government is concerned, no evidence to support this, and I've even listened to the tapes and that doesn't seem to support it either, tapes between the informant and the informant's boyfriend, Fred Pleas.

We have set up a meeting between the informant in this case and Mr. Clark and the defense investigator, which is very unusual for the government to take one of its witnesses and say, "Here you are, Mr. Clark," and ask the informant to speak with them.  Obviously the informant didn't have to do it, but we did that.

She vigorously denied that Mr. Carter would have been aware that she was working as an informant, and in fact said, no, he's the last person I would tell because it would put me in danger, among other reasons.

* * *

I don't know what's going on between Mr. Clark and Mr. Carter, but I can say,

> viewing this from the prosecutor's standpoint, even if Mr. Carter were able to say that on one particular day, that is the day of his arrest, he knew that the informant was working for the police, that's not going to get him off of the conspiracy charge.
>
> We have witnesses who will say that he was involved in a conspiracy with his two co-defendants, who have pled guilty...and he was doing that during the course of the year that is charged in the indictment.  So even if he gets off the one day that he's charged with, August 22, the evident still strongly supports his involvement in a conspiracy that lasted for well over a year.

*Id*. at 7-8.

The Court allowed Mr. Clark to withdraw even though Defendant's reasons for seeking counsel's discharge were not "legally sufficient" and there was not "reasonable cause to believe that Mr. Clark was rendering ineffective representation," stating that Defendant was being afforded new counsel "because you are facing a long prison sentence and I think you might benefit from a second opinion about your case."  *Id*. at 10.  It then appointed Steven Glazer to represent Defendant in Clark's stead.  Doc. 73.  Mr. Glazer subsequently moved for a continuance because he required "more time to properly investigate and prepare for trial."  Doc. 80.  At that time, Mr. Glazer indicated that he continuing to seek "critical telephone records that are essential to a defense," and that Defendant himself "gave counsel an additional list of potential witnesses."  *Id*.

Subsequently, the Government filed a § 851 Information as to Prior Convictions, which advised Defendant that the Government would seek enhanced penalties based on prior drug convictions.  Doc. 95.  Thereafter, Defendant entered a Plea and Cooperation Agreement and

pled guilty to Count One.[1]  Doc. 104.  During the plea colloquy, the Court engaged Defendant in

the following pertinent exchange:

| | |
|---|---|
| THE COURT: | If this case were to go to trial, in order to prove this charge against you, the government must establish...that the plan involved distributing and possessing with intent to distribute more than 50 grams of crack cocaine as charged in the indictment....Are you fully aware of the charge against you [and] these elements? |
| THE DEFENDANT: | Yes, sir, I am. |
| THE COURT: | Are you aware that in proving the elements, the government must specifically prove the type and quantity of the drugs involved in the conspiracy, which in your case is 50 grams or more of crack cocaine? |
| THE DEFENDANT: | Yes, sir. |

                                    * * *

| | |
|---|---|
| THE COURT: | [T]he government has filed a written notice that you have a prior felony drug conviction which subjects you to an enhanced statutory penalty.  It is my understanding that you and the government have agreed that you have only one prior felony drug conviction for the purposes of enhancing the statutory penalty, is that correct? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | With one prior felony drug conviction, the enhanced statutory penalty you face is a minimum mandatory term of 20 years imprisonment, up to a maximum of life....Do you understand the enhanced statutory penalty you face? |
| THE COURT: | Yes, sir. |

--------

[1]On the day before, Defendant had appeared for a change of plea, but after hearing that he might be facing a minimum mandatory life sentence if he had two or more prior felony drug convictions, he withdrew his change of plea.  Doc. 148 at 13-16.  At the second change of plea hearing, the parties agreed that he had only one prior felony drug conviction.  *See infra*.

Doc. 147 at 8-11.  Mr. Glazer then summarized the contents of the Plea Agreement:

> The agreement is that he will enter a plea to conspiracy to more than 50 grams of cocaine, or cocaine base, and the minimum mandatory sentence of 20 years, up to life imprisonment....

* * *

> I've explained to my client what a 5K1 is and that he has to earn it by talking to the prosecutor, and that it's not up to the judge to issue the 5K1, but if you are to get a 5K1, then the judge is allowed to go below the minimum mandatory sentence.

*Id*. at 13-14.  Glazer then asked Defendant if he had explained it to him, and Defendant answered, "Yes, sir."  *Id*. at 14.  Defendant acknowledged to the Court that he had reviewed the plea and cooperation agreement with his attorney, that he had signed it, and that there was nothing about the terms of it that he did not understand.  *Id*.

The Court then questioned Defendant regarding the voluntariness of his plea:

THE COURT:  Has anyone made you any promise or promises other than what's set forth in this plea agreement to get you to enter your plea here today?

THE DEFENDANT: No, sir.

THE COURT:  So there are no secret or undisclosed promises or inducements?

THE DEFENDANT: Not to my knowledge, no, sir.

THE COURT:  Has any person used any threats, force or violence or pressure, intimidation, to make you come in here and plead guilty this morning?

THE DEFENDANT: No, sir.

*Id*. at 15.  Defendant then stated that he was satisfied with Mr. Glazer's representation and that he had no complaints about how Mr. Glazer had represented him.  *Id*.

In pertinent part, the Court then found:

> I find that you are now alert and intelligent; that you understand the nature of the charge against you; and that you appreciate the consequences of pleading guilty.
>
> * * *
>
> I also find that you are fully aware of the effect of the sentencing guidelines upon your case and the possible sentence or punishment that may be imposed. I further find that your decision to plead guilty is freely and voluntarily made and that you've made your decision with the advice and counsel of a competent lawyer with whom you say you are well pleased.

*Id*. at 16.

While Defendant's Guidelines range was 168-210 months, because of the statutory enhancement pursuant to 21 U.S.C. § 841(b), he was sentenced to 240 months imprisonment. Doc. 123; Presentence Report at 26.  Defendant was afforded a two-point reduction for acceptance of responsibility.  PSR at ¶ 29.  Defendant did not receive a substantial assistance motion at sentencing because none of the information he had provided had "materially advanced an investigation...."  Doc. 146 at 20.  The Government left open the possibility of a Rule 35 motion, however, in the "hope that his cooperation would continue and that there may come a time in the future when the information he's provided to us will prove useful, and he may be able to get some relief."  *Id*. at 20-21.  Before the imposition of sentence, Defendant stated:

> [P]rior to my plea date, that three or four months prior, I explained to my counsel, Mr. Glazer, as he can tell you, that after reviewing my situation, I informed him that I would like him to go to Mrs. Rhew and accept her plea of pleaing out to less than 50 grams, which was the 44 grams that day.  But Mr. Glazer informed me that he was not a plea-out lawyer.  And then I remember what you told me that the only reason I got Mr. Glazer in the first place was because I was looking at so much time.
>
> So only to find out...when it was too late, that Mrs. Rhew had changed it over to 50 grams, and that I couldn't plea out.  But when I asked Mr. Glazer–he can tell

you, it was three or four–it was enough time to go to Ms. Rhew and plea out to the 50 grams, three to four months before we came to this plea date.  I asked him to tell Mrs. Rhew that I would accept her plea and talk to her and plea to under 50 grams.

So he told me he wasn't a plea-out attorney, and if I wanted to plea out I'd have to get another attorney.  And you told me the only way I got Mr. Glazer in the first place is that I was looking at so much time.

So, Your Honor, even though Mr. Glazer informed me that even though I would have to plea out to more than 50 grams, that if I supplied substantial assistance to the government, that Mrs. Rhew was the best attorney for giving 5K1s and Rule 35s.  If I proved worthy, that I would–that this is why, that–and from the interviews the agents gave me, they informed me that my information was good and that the only reason why they can't give me the 5K is because I–because I'm not–this date came too early, but they told me they'll call me back.  And I told him I'll give any assistance any way possible, but they said they would call me–they would have to call me back because my sentencing date was coming too early.  But the reason why–I mean, I admit I did wrong.  The reason why I went ahead and plead out that day, because Mr. Glazer told me if Ms. Rhew said if I give her substantial information that they would give me a 5K1, and then that would put it back to originally under 50 grams.

So I'm not saying I didn't do anything wrong.  I admit to my crime.  To the utmost I did it.  But I mean, even when I had time to plea out to less than 50 grams, I asked my counsel to go ahead and do it, but he felt–his judgment was that we had a case, and so I took his better judgment.  Plus I didn't think you would give me another attorney after what you went through the first time.

So I waited out and I gave the agents–two sets of agents that came to me and they said I gave them good information, and they said it was just the timing, that because I'm going to trial–I mean I'm going to plea out to–I'm going to sentencing too early that–I don't know, they said something about getting me back in.  But I want to do the right thing and I want to get out just like everybody else, along with my rights, so I can–

*Id*. at 16-18.  The Court asked Mr. Glazer if he had "anything further," and he replied, "No,

Judge.  I think Mr. Carter has said it all," which, upon the Court's questioning, he reiterated.  *Id*.

at 21.

Defendant appealed, and after filing an *Anders* brief, Glazer was allowed to withdraw.

*See Carter v. United States*, No. 02-15987 (11th Cir.).  The appellate court appointed Ryan

Thomas Truskoski in his stead, and he too filed an *Anders* brief and was allowed to withdraw.

The Eleventh Circuit then affirmed without further discussion.  Doc. 157.

      The instant motion to vacate ensued.[2]  On this occasion, Defendant raises four claims for

relief, three of which involve the effectiveness of trial counsel:  (1)  trial counsel refused to allow

Defendant to accept the Government's offer to plead to less than 50 grams of crack cocaine; (2)

trial counsel provided misleading facts as to Defendant's statutory punishment; (3) counsel failed

to move the Court for a downward departure for acceptance of responsibility; and (4) the Court

lacked jurisdiction to impose the 20-year minimum mandatory sentence.  Doc. 158 at 5-6.  He

also complains that appellate counsel "failed to communicate with [him] until after he had filed

an *Anders* brief," and he "should have raised ineffectiveness claims and jurisdiction claim."  *Id*.

at 6.  In his supporting affidavit, Defendant states:

> 1)  I explained to my counsel three (3) to four (4) months prior to my actual plea
> date, that I wanted to go to Ms. Karen Rhew (A.U.S.A) and tell her that I would
> like to accept her plea, which was to less than 50 grams.  At that time the plea
> would have been a timely plea.  But my counsel Mr. Glazer informed me that he
> was not a plea lawyer and that if I wanted to plea out that I would have to get a
> new lawyer.
>
> 2)  I did not get a new attorney because I had already been granted a new
> attorney, and I trusted Counsel's judgement, only to be informed by Counsel
> merely days before my trial was to start that Counsel thought it was best now for
> me to enter a plea of 50 grams or more and cooperate with the government.
>
> 3)  I personally wanted to enter a plea to the initial plea offer of less than 50
> grams but Counsel adamantly refused to inform the prosecution of my wanting to
> plea at that time.

---

    [2]Defendant's first motion to vacate was dismissed without prejudice as having been filed
prematurely.  *See* Docs. 132, 136, & 137.

4)  I told the Court these facts at my sentencing hearing.

5)  Ms. Rhew admitted to the Court that she had in fact offered Me a plea to less than 50 grams.

6)  The Court asked my counsel did he have anything to say about my statement at sentencing and counsel responded that, "the defendant has said everything" and did not deny any of my allegations.

Doc. 162.

Each claim will be considered in turn.

## DISCUSSION

1.      Ineffective assistance of counsel.

Because the first three claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11ᵗʰ Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11ᵗʰ Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's

conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90.  To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16.  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable

conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

In the first claim for relief, Defendant charges, as more fully set forth in his testimony at the sentencing hearing, that Glazer refused to allow him to plead guilty to less than 50 grams of crack as originally offered by the Government. Doc. 146 at 16-18; Doc. 158 at 5; & Doc. 172 at 3. In response to the instant motion, the Government submits an unsworn and unnotarized letter from Mr. Clark indicating that on February 1, 2002, which was shortly before Clark was allowed to withdraw from representation, counsel for the Government had advised him "that although she had originally made Carter the offer to plead guilty to the 50 grams, she now believed, after talking with [the co-defendants], that Carter had been dealing dope with them for quite some time." Doc. 171, Attach. A. In reply, Defendant discounts Clark's statement, claiming an evidentiary hearing would reveal it to be "incorrect/false." Doc. 172 at 3. He does

not, however, advise the Court of what evidence he has that Mr. Clark is being less than candid with the Court.

When Defendant was indicted, the Government was in possession of a videotape showing him in possession of slightly over 44 grams of crack.  Defendant does not now and never has disputed that fact.[3]  He also does not dispute that he initially turned down the Government's offer to plead guilty to the 44 grams of crack or that at the beginning he insisted on going to trial and pursuing a defense with which Mr. Clark did not agree.  Furthermore, Mr. Glazer does not now and never has disputed Defendant's assertion that he would not allow Defendant to plead guilty, even though counsel was clearly given the opportunity to address these allegations at sentencing and on this occasion.

Even so, in terms of the prejudice prong of *Strickland*, the question is whether there is a reasonable probability that if Mr. Glazer had followed Defendant's directions and advised counsel for the Government that his client wanted to plead to the lesser cocaine amount, the outcome of the proceedings would have been different.  Having carefully considered the matter, the Court answers that question in the negative, for the Court does not believe that there is a reasonable probability that after the co-defendants began cooperating, the original plea offer remained open so that Defendant could have pled guilty to the lesser drug amount.[4]  By the time Mr. Glazer was appointed and consulted his client, the co-defendants had pled guilty and were indisputably cooperating.  Indeed, it is clear that by February 21, 2002, shortly after Mr. Glazer's

---

[3]While he apparently intended to assert a defense to the possession, by pleading guilty he waived any defenses he may have had.

[4]There is no evidence to suggest that Ms. Rhew's verbal plea offer was ever reduced to writing.

appointment and trial was continued, the co-defendant, Marcus DeGeorge, intended to testify against instant Defendant in an attempt to "substantially assist the government."  Doc. 76The only substantial assistance which DeGeorge could provide with regard to this Defendant necessarily entailed his testifying that Defendant had worked with him and the other co-defendant in the drug business on more than the one occasion when Defendant was caught red-handed on videotape with the 44 grams of cocaine.[5]  In fact, the Government itself  had advised Defendant on February 11, 2002, at the hearing on Mr. Clark's motion to withdraw that it had witnesses who would testify that Defendant was involved in the conspiracy as charged in the Indictment.  Doc. 149 at 8.  Defendant does not and cannot dispute that "the policy of [the U.S. Attorney's] office is if [it] can prove more than 50, [it does not] plead less than 50."  Doc. 146 at 20.[6]  Thus, there is no reasonable probability that even if Mr. Glazer had told the Government that Defendant wanted to accept the original plea offer, the Government would have agreed.

This claim of ineffectiveness is therefore without merit.

Defendant's second claim that his plea was not knowingly and voluntarily entered is more easily disposed of.  In this claim, Defendant maintains that counsel led him to believe that he was facing a minimum life sentence and "that a plea to a minimum of 20 years was favorable

_____

[5]The other co-defendant, John Roberts, subsequently filed his own motion to continue sentencing which indicated that he too intended to testify against instant Defendant.  Doc. 82.

[6]The evidence also suggests that as of February 25, 2002, Defendant himself was continuing to press for trial.  *See supra*; *see also* Doc. 80.  For purposes of this proceeding, however, the Court will assume that Defendant acted in this manner only because Mr. Glazer refused to approach the Government about a plea.  This is probably not a reasonable assumption, as the truth is more likely that Defendant wanted to go to trial and to assert the defense outlined at the hearing on Mr. Clark's motion to withdraw which had occurred only days previously and that he was indeed assisting Mr. Glazer in that endeavor.

in his case." Doc. 158 at 5.  According to Defendant, he was indicted only for 44 grams of

cocaine base, and thus, he was not exposed to a 20-year minimum mandatory or maximum life

sentence.  He claims that he would have proceeded to trial if he had known the true nature of his

sentencing exposure.

   The law is well established that a "guilty plea means something.  It is not an invitation to

a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United*

*States*, 145 F.3d 1249,  1254 (11th Cir. 1998).  In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea]
> hearing, as well as any findings made by the judge accepting the plea, constitute a
> formidable barrier in any subsequent collateral proceedings.  Solemn declarations
> in open court carry a strong presumption of verity. The subsequent presentation of
> conclusory allegations unsupported by specifics is subject to summary dismissal,
> as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*,  431 U.S. 63, 73-74 (1977).

   Here, Defendant's allegations are plainly belied by the record.  Despite his protestations

to the contrary, he was indeed indicted for being part of a conspiracy involving more than 50

grams of crack cocaine.  Regardless of what transpired in the grand jury room, the Indictment

speaks for itself.  Furthermore, the Government properly advised Defendant that it would seek

the enhanced penalties when it filed the § 851 notice.  Most importantly, the Court very

thoroughly reviewed with Defendant the sentencing issue he now presents.  Thus, his

contentions that counsel misled him and failed to advise him properly "are contentions that in the

face of the record are wholly incredible."  The Court meticulously advised Defendant of the

sentence he faced by pleading guilty, and although he was given the opportunity to advise the

Court of any misunderstanding he had about the possible penalties involved, he did not express

any equivocation about the ramifications of his change of plea.

Defendant's *Apprendi* argument offered in rebuttal is also meritless.  Doc. 172 at 4.  In the context of a guilty plea, *Apprendi* and its progeny apply only when the sentence exceeds the "the maximum authorized by the facts established by a plea of guilty...."  *United States v. Booker*, 543 U.S. 220, 244 (2005).  Here, Defendant admitted that he conspired to distribute and to possess with intent to distribute more than 50 grams of crack and that he had at least one prior felony drug conviction.  He therefore admitted the facts necessary to warrant the imposition of the 20-year minimum mandatory sentence, and there was no *Apprendi* error.

Therefore, this ground for relief is not well taken.

As to the third claim that counsel was ineffective for failing to move for a downward departure based on acceptance of responsibility, Defendant is mistaken.  The Presentence Report clearly shows that the Probation Officer credited him with two points for acceptance of responsibility even though Defendant did not advise the Court of his desire to plead guilty until approximately three days before trial was set to begin.[7]  *See* PSR at ¶ 29.  This claim is therefore without merit.

In his rebuttal, Defendant reframes this issue as a claim that counsel should have objected to his Base Offense Level being calculated at 32 for more than 50 grams of crack, rather than 30 for less than 50 grams of crack.  Doc. 172 at 5.  This claim is also patently without merit, as he was indicted for a conspiracy involving more than 50 grams of crack cocaine, and he pled guilty

---

[7]In recommending a 2-point adjustment, rather than a 3-point adjustment, for acceptance of responsibility, the Probation Officer looked to the fact that because Defendant failed to accept responsibility until the eve of trial, the Government "was forced to prepare for trial and the Court was required to expend time and energy on preliminary trial matters."  PSR at ¶ ¶ 20-21.

to the indicted amount.

In his fourth ground for relief, Defendant maintains that the Court lacked jurisdiction to impose the 20-year minimum mandatory sentence.  This appears to be based on the same grand jury testimony asserted as bases for the second and third claims.  As previously explained, this claim is likewise without merit.

Finally, with regard to Defendant's charge that appellate counsel was ineffective for not challenging trial counsel's effectiveness on direct appeal, the Eleventh Circuit does not generally consider such a claim unless the district court entertains the claim during the trial proceedings and develops a factual record on that point.  *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002).  Neither Mr. Glazer's nor Mr. Clark's effectiveness was challenged at the district court level, and thus, it could not be raised on direct appeal.  Consequently, appellate counsel was not ineffective for failing to raise what would have been a patently frivolous issue.

Defendant also complains that appellate counsel was ineffective for failing to challenge the jurisdiction of this Court to sentence him for more than 50 grams of crack.  As discussed *supra*, this is a non-issue, and therefore, appellate counsel was not ineffective for failing to raise it.

## <u>CONCLUSION</u>

Having carefully considered the matter, the Court finds that neither trial nor appellate counsel rendered ineffective assistance in their representation of Defendant and that this Court plainly had jurisdiction over this criminal matter and to impose the minimum mandatory sentence prescribed by statute.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Pierre

Carter's motion to vacated, Doc. 158, be **DENIED**.

      **IN CHAMBERS** at Gainesville, Florida, this *22nd* day of May, 2007.

                        *S/ A. KORNBLUM*_____

                        **ALLAN KORNBLUM**

                        **UNITED STATES MAGISTRATE JUDGE**

                                **NOTICE TO THE PARTIES**

      **A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**